# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD C. KIBURZ, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:04-CV-02247 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| GORDON R. ENGLAND, | : | |
| Secretary, United States Department | : | |
| of the Navy, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's motion for partial summary judgment on Plaintiff's complaint. (Doc. No. 17.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be denied.

## I.   BACKGROUND[1]

Plaintiff had been employed by the United States Department of Navy ("Navy") as a senior software engineer at the Navy Fleet Material Support Office[2] in Mechanicsburg, Pennsylvania. (Doc. No. 20 at ¶ 4.) Plaintiff's position with the Navy involved computer programming at a high level of difficulty and significance. (Id. at ¶ 8.) Plaintiff was responsible for special projects, design changes, and other software applications or operations that were complicated by extensive and significant interactions with other information technology systems. (Id. at ¶ 9.) As part of Plaintiff's

---

[1] The following information was taken from the parties' undisputed statements of material facts. (Doc. Nos. 20, 23.)

[2] Now known as the Navy Supply Information Systems Activity.

responsibilities, he was required to meet frequently with users, computer analysts, and programmers. (Doc. No. 23 at ¶ 11.)

Plaintiff suffers from severe degenerative joint disease and moderate spinal stenosis at multiple levels, which has been referred to as severe arthritis of the spine. (Doc. No. 20 at ¶ 13.) This condition causes unpredictable spells of severe, incapacitating pain. (Id. at ¶ 14.) Plaintiff's physician advised the Navy that Plaintiff's incapacitating pain and dysfunction would continue and likely worsen over time, and he further recommended that the Navy accommodate Plaintiff's condition with a suitable chair and a flexible work schedule. (Id. at ¶¶ 15, 16.) Plaintiff's physician noted, however, that even if the Navy met these accommodations, there would still be periods of time when Plaintiff would be unable to work. (Id. at ¶ 17.)

The Navy and Plaintiff engaged in a series of attempts to reach an agreement that could accommodate both Plaintiff's and the Navy's needs; however, this process ultimately failed. (Id. at ¶¶ 18-20.) As a result, Plaintiff missed significant periods of work, most of which was unscheduled.[3] (Id. at ¶ 23.) Following the extended periods of absence, Plaintiff's supervisor, Ferguson, wrote to advise Plaintiff that upon his exhaustion of leave under the Family Medical Leave Act, Plaintiff's leave without pay would no longer be approved. (Id. at ¶ 27.) Ferguson further advised Plaintiff that the Navy needed to be able to predict confidently Plaintiff's availability to schedule time-sensitive meetings and classes. (Id. at ¶ 28.) In addition, Plaintiff was advised that if he was unable to come to work and be

---

[3] From June 21, 1999 through July 1, 2000, Plaintiff used 727.5 hours of leave due to medical problems. (Doc. No. 20 at ¶ 21.) Additionally, from February 13, 2001 through October 19, 2001, Plaintiff also used 718.5 hours of leave, most of which was without pay due to Plaintiff's limited amount of earned annual sick leave. (Id. at ¶ 22.)

available for meetings and classes then further action, including removal, may be required. (Id. at ¶ 29.) However, Plaintiff continued to miss work and the Navy terminated Plaintiff effective May 3, 2002. (Id. at ¶ 34.)

Plaintiff filed a complaint with the Merit System Protection Board ("MSPB") stating the following claims: (1) his termination violated the merit system rules governing termination of federal employees; and (2) his removal constituted disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.[4] (Id. at ¶¶ 36-37.) An Administrative Law Judge ("ALJ") issued an Initial Decision on September 20, 2002. On Plaintiff's first claim, the ALJ concluded that Plaintiff's absences had not continued for a reasonable time after he was warned about the possibility of termination. As a result, the ALJ ordered the Navy to reinstate Plaintiff retroactively to May 3, 2002, and to pay him all back pay and benefits. (Id. at ¶ 45.) The ALJ dismissed Plaintiff's second claim concluding that Plaintiff was not a "qualified individual" entitled to relief under the Rehabilitation Act.[5] (Id. at ¶¶ 44-47.)

Both the Navy and Plaintiff filed petitions for review to the MSPB full board ("Board"). (Doc. No. 20 at ¶ 48.) On June 23, 2003, while the appeal was pending, Plaintiff accepted a voluntary early retirement program for which he was eligible. (Id. at ¶ 51.) Shortly thereafter, on July 5, 2005, Plaintiff

---

[4] A federal civil service employee against whom an adverse employment action has been taken may appeal to the Merit Systems Protection Board. 5 U.S.C. § 7513. The MSPB is a quasi-judicial federal administrative agency charged with overseeing and protecting the merit system, and adjudicating conflicts between Federal employees and employers. Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998).

[5] A "qualified individual" is defined as an individual with a disability who is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer. 29 C.F.R. § 1614.203(a)(6); Mengine v. Runyon, 114 F.3d 415, 418 (3d Cir. 1997).

filed a second complaint with the MSPB claiming that his voluntary retirement constituted a constructive discharge in violation of the Rehabilitation Act because the Navy failed to accommodate his medical condition. (Id. at ¶ 53.) However, because Plaintiff's appeal to the Board was still pending, the ALJ dismissed Plaintiff's complaint "without prejudice to its refiling no later than fifteen days from the date of the Board's final decision in the prior appeal."[6] (Id. at ¶ 60.) On September 5, 2004, the Board issued its decision regarding Plaintiff's appeal, which became final on September 16, 2004, and denied both parties petition for review. (Id. at ¶ 71.) As a result and pursuant to the order dismissing Plaintiff's second complaint, Plaintiff needed to file a "notice of intent to refile" within fifteen days of the MSPB's final decision on Plaintiff's appeal. (Id. at ¶ 72.) Plaintiff never filed such a notice. (Id. at ¶ 73.)

On October 12, 2004, Plaintiff initiated this civil action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. ("RHA"). (Doc. No. 1.) In the complaint, Plaintiff brings an official capacity suit against the Secretary of the United States Department of Navy, Gordon R. England (hereinafter "Navy"). The two count complaint asserts the following claims under section 504(a) of the RHA, 29 U.S.C. § 794(a): disability discrimination in the form of failure to accommodate ("Count I"); and constructive discharge for failing to accommodate Plaintiff's disability ("Count II"). On April 11, 2005, Defendant filed a motion for partial summary judgment on Count II of Plaintiff's complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 17.)

## II. **STANDARD OF REVIEW**

---

[6] In the order dismissing Plaintiff's second complaint to the MSPB, the ALJ stated that Plaintiff could refile his second complaint by simply filing a "notice of intent to refile." (Id. at ¶ 61.)

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  A factual dispute is material if it might affect the outcome of the suit under applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 249.  When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Id. at 322.

## III.    DISCUSSION

Count II of Plaintiff's complaint asserts a claim for constructive discharge for failing to accommodate Plaintiff's disability as required under section 504(a) of the RHA, 29 U.S.C. § 794(a). The RHA provides that anyone receiving federal funds may not discriminate against an "otherwise

qualified individual with a disability." 29 U.S.C. § 794(a). In order to make a prima facie case of discrimination under the RHA, a plaintiff must prove three elements: (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he was nonetheless terminated or otherwise prevented from performing the job. Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996). Defendant has moved for partial summary judgement on Count II of Plaintiff's complaint, arguing that Plaintiff's claim is barred because he has failed to exhaust the administrative remedies with respect to his constructive discharge claim.

It is well settled that an aggrieved federal employee must exhaust administrative remedies before bringing a civil action. See Chandler v. Roudebush, 425 U.S. 840, 863-64 (1976) (holding that federal employees have the same right to a trial de novo as is enjoyed by private sector and state government employees under the amended Civil Rights Act of 1964 after exhausting their administrative remedies); Ettinger v. Johnson, 518 F.2d 648 (3d Cir. 1975) (holding that employee was required to exhaust administrative remedies before suing in district court under Title VII). Similarly, a federal employee can sue an employer for employment discrimination under the Rehabilitation Act but the employee must first exhaust administrative remedies.[7] Freed v. Consolidated Rail Corp., 201 F.3d 188

---

[7] The standards for liability under the RHA and the Americans with Disabilities Act, 42 U.S.C. §§ 12010 et seq. ("ADA"), are identical. 29 U.S.C. § 794(d); McDonald v. Pa. Dep't of Welfare, 62 F.3d 92, 95 (3d Cir. 1995). Furthermore, the United States Court of Appeals for the Third Circuit has espoused the same framework for evaluating discrimination claims under the ADA as those under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); see also 29 U.S.C. § 794(a) (stating the remedies, procedures and rights set forth in the Civil Rights Act of 1964 shall be applicable to an employee aggrieved under the RHA). Therefore, the Court will apply the framework for Title VII claims to the

(3d Cir. 2000); Spence v. Straw, 54 F.3d 196 (3d Cir. 1995); see also Mackay v. United States Postal Serv., 607 F. Supp. 271 (E.D. Pa. 1985) (holding that a Postal Service employee suing for employment discrimination based on handicap had no right to judicial relief where the employee initiated but failed to exhaust administrative remedies).

On July 5, 2005, Plaintiff filed a second complaint with the MSPB claiming that his voluntary retirement constituted a constructive discharge in violation of the RHA. (Doc. No. 20 at ¶ 53.) However, because Plaintiff's first MSPB appeal to the Board was still pending, the ALJ dismissed Plaintiff's complaint "without prejudice to its refiling no later than fifteen days from the date of the Board's final decision in the prior appeal." (Id. at ¶ 60.) It is undisputed that Plaintiff failed to refile with the MSPB following the Board's final decision on Plaintiff's prior appeal. (Id. at ¶ 73.) Therefore, Plaintiff failed to exhaust the administrative remedies with respect to his constructive discharge claim prior to seeking redress in federal court. Spence, 54 F.3d at 201.

Plaintiff contends he is entitled to an exception to the exhaustion requirement on his constructive discharge claim because pursuing such a remedy here would be futile, frustrate judicial economy, and because his claim is fairly within the scope of the previous disability discrimination claim under the RHA.[8] (Doc. No. 22.)

As discussed above, a plaintiff must exhaust Title VII administrative remedies before bringing suit under the RHA. Spence, 54 F.3d at 201. However, the United States Court of Appeals for the

---

instant claim arising under the RHA.

[8] The Court construes Plaintiff's "futility" and "judicial economy" arguments to be supplemental and equivalent to his "within the scope of prior complaint" argument.

Third Circuit has recognized that, in certain circumstances, a plaintiff will be excused from exhausting administrative remedies with respect to a claim. Waiters v. Parsons, 729 F.2d 233 (3d Cir. 1984). The Third Circuit has held that "[t]he relevant test in determining whether appellant was required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior [MSPB] complaint, or the investigation arising therefrom." Id. 237. If a plaintiff has a complaint pending before the MSPB and the new acts alleged are fairly within the scope of the MSPB complaint, "the purposes of the statutory scheme are not furthered by requiring the victim to file additional [MSPB] complaints," and, therefore, the plaintiff does not need to exhaust administrative remedies with respect to the new claim. Crumpton v. Potter, 305 F. Supp. 2d 465, 475-76 (E.D. Pa. 2004) (quoting Waiters, 729 F.2d at 237).

In Waiters, the plaintiff's initial complaint charged retaliation and her subsequent complaint charged retaliation in the form of discharge. 729 F.2d at 237. The court emphasized that, despite the different circumstances and officials involved in the retaliation allegations asserted in the two complaints, the core grievance – retaliation – was the same in both instances. Id. at 238. Courts within the Third Circuit have consistently applied the consideration identified in Waiters to determine whether a plaintiff is required to exhaust the administrative remedies prior to seeking a subsequent claim of employment discrimination in federal court. See Crumpton, 305 F. Supp. 2d at 468 (relying on the Waiters test to find that plaintiff's claim was not within the scope of prior complaint with Equal Employment Opportunity Commission and therefore plaintiff failed to exhaust the administrative remedies); Spindler v. Southeastern Pa. Transp. Auth., 47 Fed. Appx. 92, 94 (3d Cir. 2002) (concluding that plaintiff's charges of disability discrimination did not fairly encompass his claim of racial discrimination); Robinson

v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1996) (reaffirming the decision in Waiters); Hanani v. N.J., No. 03-3111, 2005 WL 130823, at *13-15 (D.N.J. May 31, 2005) (holding that plaintiff's subsequent complaint of retaliation was not within the core grievance of her prior complaint of discrimination based on nationality); Portia v. Cohen, No. 98-3643, 1999 WL 357352 (E.D. Pa. June 4, 1999) (holding that plaintiff was required to exhaust administrative remedies because her claim of retaliation was not mentioned in her initial claim of sexual assault and harassment).

Defendant argues that exceptions to the doctrine of exhaustion of administrative remedies no longer exist in light of the United States Supreme Court's decision in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002). Specifically, Defendant contends that Morgan made clear that each discrete discriminatory act constitutes a separate actionable unlawful employment practice and that each claim must be timely presented to the Equal Employment Opportunity Commission. (Doc. No. 24 at 8.) The Court finds that Defendant's reliance on Morgan is misplaced.

The issue before the Court in Morgan was whether discrete discriminatory acts are actionable if time-barred when they relate to acts alleged in timely filed charges. 536 U.S. at 113. The Court "conclud[ed] that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period . . . set forth in 42 U.S.C. § 2000e-5(e)(1)." Id. at 122. Thus, the focus of the Court's analysis was not on the doctrine of exhaustion of administrative remedies, but rather, it was on the issue of untimely claims. In addition to the Court's conclusion on timeliness, the Court also concluded that "a charge alleging a hostile work environment claim will . . . not be time barred so long as all the acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id.

Defendant has suggested that the Court's holding in Morgan means that the only forum in which the exception to exhaustion applies – where new acts of discrimination occur during the pendency of a case that is fairly within the scope of the complaint – is in the hostile work environment context. However, the holding of the Court fails to address or even mention the doctrine of exhaustion of administrative remedies and Defendant's extension of the Court's holding to reach matters outside the scope of timeliness is misleading. Furthermore, the Court stated that "[n]either holding . . . precludes a court from applying equitable doctrines" and "Courts may evaluate whether it would be proper to apply such doctrines." Id. at 113, 122; see also Bowen v. City of New York, 476 U.S. 467, 482 (1986) (exhaustion excused for same reasons as those allowing tolling of the statute of limitations). As discussed above, courts of the Third Circuit have continued to apply the equitable exception to the doctrine of exhaustion of administrative remedies announced in Waiters. Thus, the Court rejects Defendant's assertion that the Third Circuit's exception no longer exists and will apply the standard announced in Waiters to the case at bar.

Plaintiff's initial complaint to the MSPB alleged that the Navy's failure to accommodate his disability constitutes discrimination under the RHA. (Doc. No. 21.) Plaintiff requested accommodations in the form of an office chair that enables him to work in a reclining position and a work schedule that authorizes him to arrive late, work late, work on weekends, and work from home. (Id. at 35.) The MSPB thoroughly discussed each of Plaintiff's accommodations and ultimately made the following conclusions: (1) providing the type of chair Plaintiff requested for the office is not a reasonable accommodation; and (2) under the circumstances, the flexible work schedule requested by Plaintiff is not a reasonable accommodation. (Id. at 38, 39.) While Plaintiff's appeal of the MSPB's

decision on his disability discrimination claim was pending, he filed a second complaint with the MSPB for constructive discharge. (Doc. No. 22, Ex. 2.) In this complaint, Plaintiff alleged that the Navy constructively discharged Plaintiff by failing to provide reasonable accommodations for his disability, "which includes a flexible work schedule including, starting work late and staying late . . . working on Saturdays . . . allow me to work from home . . . and provide a chair which fills my medical needs."[9] (Id. at 5.)

Applying the principles and test articulated in Waiters to the case at bar, and upon a thorough review of the procedural history of Plaintiff's claims, the Court finds that despite the different claims asserted in the two complaints, the core grievance – failure to accommodate – was the same. Waiters, 729 F.2d at 238. Therefore, Plaintiff was not required to exhaust administrative remedies with respect to the constructive discharge claim prior to filing his complaint in federal court.

## IV.     CONCLUSION

Based on the foregoing, the Court finds that Defendant's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure must be denied.

---

[9] Plaintiff's claim for constructive discharge was dismissed by the MSPB and Plaintiff was ordered to refile within 15 days of the Board's final decision on his pending appeal. (Doc. No. 21 at 48.) Plaintiff failed to refile his complaint with the MSPB and instead, initiated the complaint presently before the Court.

## V.  ORDER

**AND NOW**, this 21st day of September, 2005, upon consideration of the foregoing, **IT IS HEREBY ORDERED THAT** Defendant's Motion for Partial Summary Judgment (Doc. No. 17) on Count II of Plaintiff's Complaint will be **DENIED**.

**IT IS FURTHER ORDERED THAT** a telephone conference shall be held on October 11, 2005, at 2:00 p.m.  Plaintiff's counsel shall initiate this conference call.   The telephone number of the Court is 717-221-3990.

      S/ Yvette Kane
Yvette Kane
United States District Judge